FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ JUN 19 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
FRANCES FERRARI,

        Plaintiff,

    - against -

NANCY A. BERRYHILL ACTING
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**
18-CV-2709

**ANN M. DONNELLY,** United States District Judge:

On May 7, 2018, the plaintiff filed this action seeking review of the Social Security Commissioner's decision that she was not disabled for the purposes of receiving Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act. The plaintiff's primary challenge is to Administrative Law Judge ("ALJ") Hilton R. Miller's assessment that none of her treating physicians' opinions should be accorded controlling weight. The plaintiff's motion for judgment on the pleadings is granted, and the Commissioner's cross-motion is denied.

On March 20, 2015, the plaintiff, then 58 years old, applied for SSDI benefits, alleging that her disabilities—including diabetes, atrial fibrillation, right knee bone spurs, pulmonary disease, asthma, and hypertension—began on February 20, 2015. (Tr. 15, 218.) On March 28, 2017, ALJ Miller held a video hearing, at which a medical expert in orthopedics, a vocational expert testified, and the plaintiff. (Tr. 29–51.) On May 9, 2017, the ALJ concluded that the plaintiff was not disabled for the purposes of obtaining SSDI benefits. ALJ Miller found that the plaintiff suffered from severe impairments of atrial fibrillation, diabetes, chronic obstructive pulmonary disease, and a right knee disorder (Tr. 17), but that she retained the residual

1

functional capacity ("RFC") to perform light work (Tr. 18).[1] The ALJ found that given the plaintiff's RFC, she could work as a director of a nurse's registry, a nurse consultant, and a utilization review coordinator, all of which exist in the national economy in significant numbers. (Tr. 21.)

After the Appeals Council declined to review the ALJ's decision (Tr. 1-3), the plaintiff commenced this action (ECF No. 1). Both parties moved for judgment on the pleadings. (ECF Nos. 14, 20.) For the reasons that follow, the plaintiff's motion for judgment on the pleadings is granted, the Commissioner's cross-motion is denied, and the case is remanded for further proceedings.

## DISCUSSION

A district court reviewing a final decision of the Commission must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (citation omitted). The Court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla,' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). However, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (quoting *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).

---

[1] The plaintiff could stand and walk for a total of two hours each workday, and could climb ramps and stairs, balance, kneel and squat only occasionally. She could never climb ladders, ropes or scaffolds, or use foot controls. (Tr. 18.) In addition, the plaintiff needed a "sit/stand option every hour." (*Id.*)

2

On appeal, the plaintiff challenges the ALJ's conclusion that the opinions of the plaintiff's treating doctors—Dr. Marianne LaBarbera, the plaintiff's primary physician (Tr. 291), Dr. John Reilly, the plaintiff's knee specialist (Tr. 341), and Dr. Radu Ariton, the plaintiff's cardiologist (Tr. 336)—did not merit controlling weight. I agree that remand is required so that the ALJ can reexamine the treating physicians' opinions, and the weight they deserve.

It is well-settled that an ALJ should give a treating physician's opinion controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "[I]f the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Estrella v. Berryhill*, No. 17-3247, 2019 WL 2273574, at *2 (2d Cir. May 29, 2019). When the ALJ does not give a treating physician's opinion controlling weight, she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (internal citations omitted). Moreover, "the ALJ must explicitly consider, *inter alia*, (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); 20 C.F.R. § 416.927(c)(1)–(6). If the ALJ does not "explicitly" consider these factors the case must be remanded unless "a searching review of the record" makes it clear that the ALJ applied "the substance of the treating physician rule." *Estrella*, 2019 WL 2273574 at *2 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

This case must be remanded so that the ALJ can clarify which factors he considered in making his determinations about the weight to assign each treating doctor's opinion—the

3

frequency, length, nature, and extent of treatment, the medical evidence supporting the opinion, whether the opinion is consistent with other medical evidence, and whether the physician is a specialist.[2]

ALJ Miller's assessment of treating physician Dr. LaBarbera's opinion did not include consideration of the appropriate factors. As the plaintiff's primary physician, Dr. LaBarbera saw the plaintiff every few months beginning in 1996. (Tr. 291–95.) Dr. LaBarbera explained that the plaintiff suffered from "significant physical lower extremity conditions" which rendered her "unable to perform any work." (*Id.*) In her opinion, the plaintiff could sit for only thirty minutes at a time, stand for ten minutes at a time, sit less than two hours a day, stand or walk less than two hours a day, and lift under ten pounds only occasionally; the plaintiff could not "climb more than 3 steps without sitting" or walk more than half a block. (*Id.*) ALJ Miller concluded that Dr. LaBarbera's observations about the plaintiff were inconsistent with her treatment notes. The ALJ said that the doctor's notes did not mention the serious limitations Dr. LaBarbera described in her medical source statement. The ALJ also noted that the plaintiff's condition improved in the spring of 2015, and that her blood sugar was "much better," that her diabetes had "improved," that she was not in "acute distress," and that the swelling had decreased in her lower

---

[2] While the ALJ accorded only some or little weight to the treating physicians' opinions, he gave significant weight (Tr. 19) to the opinion of Dr. Robert Thompson, an orthopedic specialist who did not examine the plaintiff but nevertheless concluded that the plaintiff could walk and stand for one hour at a time, sit for an hour at a time, stand or walk for up to three hours a day, and sit for four hours a day (Tr. 39–41). On remand, the ALJ should reexamine his decision to accord Dr. Thompson's opinion greater weight than the opinions of the doctors who actually treated the plaintiff. 20 C.F.R. § 416.927(f)(2) ("In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination."); *see Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) (The ALJ's decision to "elevat[e] the opinion of the medical adviser, who never had examined [the plaintiff], over that of Dr. Pajela, her treating physician" was improper); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 348 (E.D.N.Y. 2010) ("Medical reports that are not based on personal observation deserve little weight in the overall evaluation of disability.") (internal quotation marks and citation omitted).

extremities. (Tr. 19–20.) These factors, in the ALJ's view, undercut Dr. LaBarbera's conclusion that the plaintiff could not work. (*Id.*) Nevertheless, the ALJ did not specify what weight, if any, he gave Dr. LaBarbera's opinion. Accordingly, I remand this case so that the ALJ can specify the weight the doctor's opinion deserves. *See Estrella*, 2019 WL 2273574 at *2 ("[I]f the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it.").

Remand is also required on the subject of the weight to be given to the opinion of treating physician Dr. Reilly, who treated the plaintiff for her knee problems beginning in February of 2015. (Tr. 341.) Dr. Reilly reviewed x-rays of the plaintiff's right knee and diagnosed her with "mild to moderate arthritis." (Tr. 281.) Dr. Reilly opined that the plaintiff would be able to sit for no more than four hours and stand for about two hours in an eight-hour work day. (Tr. 366–68.) Additionally, the plaintiff could occasionally lift ten pounds, rarely lift twenty pounds, and never lift fifty pounds. (*Id.*) Dr. Reilly concluded that the plaintiff would have to miss at least two days of work a month because of her impairments. (Tr. 369.) ALJ Miller gave Dr. Reilly's opinion "some weight because of the claimant's knee arthritis," but also concluded that the doctor's examination findings did not support his opinion about the plaintiff's limitations in sitting, standing, and lifting. (Tr. 19.) In reaching this conclusion, the ALJ did not discuss the frequency, length, nature, or extent of the treatment, nor did he examine the medical evidence that supported Dr. Reilly's opinion. *See* 20 C.F.R. § 416.927(c)(1)–(6). This, too, constitutes grounds for remand. *See Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion."); *Fontanez v. Colvin*, No. 16-CV-01300, 2017 WL 4334127, at *18 (E.D.N.Y. Sept. 28, 2017) (same).

The ALJ's decision to give little weight to the opinion of the plaintiff's treating cardiologist, Dr. Ariton, also requires remand. In an August 2015 functional capacity questionnaire, Dr. Ariton reported that the plaintiff was still experiencing atrial fibrillation and hypertension, and that she had difficulty breathing and suffered from palpitations when experiencing atrial fibrillation. (Tr. 323-25.) Dr. Ariton based her opinion on objective observations of the irregular and dysfunctional pattern of the plaintiff's heartbeat. (*Id.*) In Dr. Ariton's opinion, the plaintiff's symptoms would frequently interfere with the attention and concentration required to perform simple work tasks. (Tr. 324.) Moreover, the plaintiff was "[i]ncapable of even 'low stress' jobs" because "physical, intellectual, [and] emotional strains are known triggers of atrial fibrillation." (*Id.*) Dr. Ariton concluded that the plaintiff could stand for less than two hours in a workday, rarely carry less than ten pounds, and never lift twenty pounds or more. (Tr. 325.)[3] Citing normal results of an October 2014 myocardial perfusion study and echocardiogram as evidence that the doctor's opinion was "inconsistent with [her] examination notes," the ALJ gave her opinion little weight (Tr. 20), but did not evaluate or mention evidence that supported Dr. Ariton's statement, including the doctor's August 2015 note that the plaintiff was improving, but continued to suffer from atrial fibrillation. (Tr. 327.) Nor did the ALJ discuss Dr. Ariton's note in the October 2014 study that there was mild diastolic dysfunction in the plaintiff's left ventricle as well as pulmonic and mitrial regurgitation. (Tr. 333.)

The plaintiff also challenges the ALJ's finding that the plaintiff could do the work identified by the vocational expert on the ground that the ALJ did not determine whether there would be "very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry," as required under 20 C.F.R. § 404.1568(d)(4). The ALJ found that the

---

[3] Dr. Ariton did not express an opinion about the length of time that the plaintiff could sit.

6

plaintiff's nursing skills were transferable, but did not ask the vocational expert whether the plaintiff would need to make any "vocational adjustments" or include that determination in his decision. On remand, the ALJ should also clarify whether any vocational adjustment is required for the plaintiff to work in a job that he finds consistent with her RFC. *See Ruiz v. Berryhill*, No. 15-CV-1059, 2018 WL 4047204, at *15 (E.D.N.Y. July 24, 2018) (The ALJ's reasoning that the plaintiff "would not need to learn to use any new tools" "pulls up way short of showing that there would be 'very little, if any, vocational adjustment . . . ' from [the plaintiff]'s previous work as a school bus driver to working at any of the three other occupations the VE put forth.").

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for judgment on the pleadings is granted, the Commissioner's cross-motion is denied, and the case remanded for further proceedings consistent with this opinion. The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
   June 19, 2019